The attorney for the appellant. Can you state your name for me? I'm sorry? Carlson. Okay, Mr. Carlson, when you're ready. You're signing, and it's hard to read your name. It looks like my signature. I know Mr. Gorman, but I... My ability to hear. That's all right. This case is a... I feel like it's a little repetitive. We're talking about single injuries. But it's a relatively, I think, straightforward case that's resolved incorrectly by the trial court on a cross-motion disarming judgment where they get a single person injured, Brandon Niemier, in an accident with the tort infuser, Mr. Aldridge, who had a liability limits policy of $250,000 per person and $500,000 per occurrence, and his parents had a automobile insurance policy with Country, which had identical limits of uninsured and underinsured motorist limits of $250,000 per occurrence and $500,000 per occurrence. And here in the underlying claim, the claimants divided the claim up in their own allocation of giving some money to Brandon and some money to the parents for their derivative claim, their society claim, medical payments claim. They divided up those liability limits. What did the state farm policy say about the definition of whether a derivative claim was included in an injured person's claim? Well, I guess it's not in this record, the state farm policy, apparently, but as counsel quotes from the Country, and I believe it is the same language that he quotes, the limits of liability language from the Country policy, that the bodily injury limits, and we don't disagree about this, for each person is the maximum amount we will pay for all damage arising out of bodily injury to any one person in any one accident. That maximum amount includes any claims of other persons for damage arising out of that bodily injury. If there is arguably they have a limit of $250,000 for Mr. Aldridge for a single bodily injury to Brandon Demeyer and all claims arising out of that bodily injury, of course their claim here in this case that they have other, that the parents have separate claims for their own, on their own standing to assert. If they did have separate claims against the state farm. The reason I ask the question is, I mean, if state farm did not define it that way, and if it's not in the record, I guess there's no way we can tell, but if state farm did not include derivative claims within the original claim, then can't it be asserted that they did not use up the $250,000? They did not exhaust it then. And then under the statute, we get credit for the amount they didn't exhaust so that there is no potential under their honor, under that theory, there can't be an uninjured motorist claim because they didn't exhaust the other per person limit of $250,000. So we get credit for the, because the limits are the same, $250,000, $500,000, we get a credit for it. So they try to play both sides, that's our whole case. It's just, it gets to the whole point of looking at the entire contract, the statute, reading it as a whole, the purpose of uninjured motorist coverage, and here we have uninjured motorist coverage that someone has bought for $250,000, to guarantee them up to $250,000 per person, and the single person accident, 500, if multiple people are injured, because it talks about, in a per occurrence definition, that's why I like the March, March 20 case, they talked about how you're rendering these clauses meaningless for per person, per occurrence, because that talks about the per occurrences where two or more people are injured, get 500. They want to collect a total of $500,000 for a single injury per person, person, when they have a contract to guarantee them up to $250,000 for a single injury per person, and they collected $250,000 and they just allocated it this way to try to get around the language, and which has been rejected by the courts in other analogous situations, and direct situations, like Kat's case, and I talked in my reply about the March on the Supreme Court case, where the same thing, where they just tried to, they could think that, look, Brandon got $250,000, and the parents would claim, well, we get another $250,000 because we have our derivative claim for society, medical payments, and we get an additional $250,000, and the March Joining Court rejected that argument on the Supreme Court of Illinois, and cited a whole list of cases that have found citing identical language where derivative claims, whether you call it a consortium or medical payments or society, where the other person is not included in that limit to be insured, and here, instead of just taking the $250,000 to give it to Brandon and claiming $250,000 for the parents separately, they have, well, we'll do it a little differently this time. We'll break up the first $250,000 and give part to the parents and part to the child, and then claim an additional $250,000. It's the same attempt, just a different mixing and matching of the dollars, but since the policy definition states that all amounts paid or damages arising out of a single person's bodily injury are attributed to that person, you can't just manipulate that way, different from March Joining Court asking for two limits. You're asking for two limits by dividing up in half and doubling, in effect, here. So here, you don't even get, and of course, the definition in the policy, uninsured motorist vehicle, is where the limits are different, are greater in the uninsured motorist coverage than the torturer's, and those two are identical, so on that analysis, you would just end it right there. There is no potential uninsured motorist claim because the limits are identical. They argue there's an exception to that for the Hathaway-Cummings case where we had multiple injured people in that, in those accidents, and because of the multiple injured people, where they couldn't recover the single per person limit because there's three, four, five people injured and there's only a 50-100 limit, so they each can't, three or four people each can't get 50, someone gets 15, someone gets 25, someone gets 35, they get less than their uninsured motorist limits as a total, but those are because of, as the Brasutti court pointed out, the difference with, of course, here we don't have multiple injured people in the same accident, we have derivative claims, and that's because in those Cummings cases there are payments to third parties that reduce the limits, not to people who are insured under the same policy. Even if they are insured, of course, the beginning definition talks about an insured sustaining injury and a bodily injury, and of course no parents can sustain any injury in this case. This is just kind of an extreme attempt to get beyond what the policy says, contravening the statute under the case law on uninsured motorist coverage, which is to fill the gap to get you up to a total of 250 recovery, that's what you contracted for. If you had, I threw out all the examples, if you used uninsured motorist coverage, for example, your honors, and you, there was, the tort visa here didn't have any coverage, had no policy at all, and they had uninsured motorist limits of 250, does that mean that they can each be, that would mean that the parents can get 250 for their derivative claim, and the, the, Brandon can get 250 for his bodily injury claim. Again, contravening the statute of 250, stacking the coverages. If you did say that that was not permissible, then you're not really interpreting the policy reasonably, you're giving a different result for uninsured motorist from an underinsured motorist case. You have a situation here where the claimants, the demeyers refer to the parents saying they're insurers, and they say, for convenience, we're going to call them a combined claimant, or one insurer, but then they're separate insurers. Why are, what if they were divorced, and they said, wouldn't they each be a separate insurer in that theory, a different claimant, how could they be a insurer, or two insurers, one insurer, that's why this leads to so many absurd results, because it contravenes the very purpose that the courts have found so consistently of uninsured motorist coverage. You've got 250, you, you, you contract for 250, you've got 250, you cannot manipulate it by these games to try to contravene the purpose of uninsured motorist coverage to fill the gap where there is no gap, where all claimants derive from the injury to Brandon Demeyer and are attributable to him for the purpose of the limits. And I think I'm going to start repeating myself, but I don't know. You don't have to take all your time. I don't know if there's another question. I know there's arguments raised, like I pointed out in the brief, like the trial court seemed to, you know, say the Katz case, for example, a different language. I, you know, I tried to quote the language directly in my opening brief, and I don't see, didn't the court, trial court, didn't explain what was different about the language. I see they're virtually identical. They talk about, they use some slightly different words, but they essentially say the same thing, that all claims of others, either by injury, are included within the limit, whether it's, whatever claim it is. And there's also language that the limits are increased no matter the number of insurers. If the parents are insured, the number of insurers are not increased. This is not a coming situation of many people injured in a single vehicle accident, at the exception that you can get beyond the initial hurdle of the limits match, no uninsured voters there. And if anyone has any questions at this time, I would just ask that the court would have the consideration to reverse the summary judgment of the trial court and grant the summary judgment in favor of function deferred. Thank you. Thank you. Mr. Gorman. May it please the court. My name is Jim Gorman. I'm on counsel with Luke O'Brown, Dr. Elton Dawson at Edwardsville. I made a couple notes while Keith was arguing, and two things I picked up immediately is that he's trying to turn these very serious claims of loss of consortium medical bills into secondary to the bodily injury. They're not. Each one of those claims is just as important as having the bodily injury. This uninsured voters' coverage was made for claims like this, where a young man seriously injured, $186,000 in bills, and it was just billed for UIM coverage. Country Mutual has a very modern policy here, but I don't know who the claims person is behind Keith, but they're trying to drag this fairly modern policy back to the Stone Ages. And he says we've only got one claim here. That's not true. We've got one injury here, but multiple claims. The two main claims of the parents are $186,000 in bills and a small loss of service. It was farm season coming up. Seventeen-year-old lad on a farm seriously injured. So that is a claim worth something there, too. Why are they not derivative? The Supreme Court calls them derivative. So if they're derivative, wouldn't there be one claim then deriving from the injured boy? No. All derivative means is they vote from the bodily injury. But they're separate claims. They may be derivative, but they stand on their own, and they're just as important to those parents as they are to the B.I. So, and you're right, if you would file a lawsuit, they would be filed individually as separate counts, right? Yes. But in this particular instance where you're asking for additional coverage, what about the set-off? You're not asking for a per-occurrence claim. You're not making a per-occurrence claim, right? No. It's strictly a per-person. So what about the set-off that they argued in entitlement to? Under this policy they have, all that language about set-off and reduction is gone. Keith sort of jumbled them all together, but this, if I look at my referral file, this language has changed. He can bring up two or three cases, like the Katz case and the Muschardt case, and there's one other one there, but none of them have the same language we have in our policy. Keith calls our result absurd. And yet Judge Crowder looked everything over, and here's what she said in her opinion. There is no, this is over Judge Crowder's signature, there is no dispute of any material fact in this case. The court reviews the plain language of the policy. Now how can it be absurd on one hand, and a circuit judge reviews it and says she's making her decision on the plain language of the policy? The reason she's doing that is when you look at the policy, and it is hard to find the policy here because you have the basic policy, and then you have an amendment, and it's difficult to parse through and pick out. So both Keith and I saw that this difficultly, and we set out all the provisions that you have to interpret in one page of the court. And if I might, rather than talk about all the old language that has been tossed out of this policy, I'd like to talk about the policy that this court will be interpreting. First of all, it starts out the same way. It's amended as follows. If you have paid for this coverage, we will pay damages for which the insurer is legally entitled to recover from the owner of the underlying vehicle. Who qualifies there? Brandon, the son, qualifies, and the mother and father qualify. They both have claims against the Southern Torquies, so we're clear of that. They fit that part of the policy. And if you look at that second paragraph, if you have uninsured motorist coverage, we will pay only after all the other policies below are exhausted. That's why Keith is trying to turn this in all through his briefs there. He's trying to make this a pearl of current space, because he knows he can then build it up and knock it down, because we did not exhaust it in the first going after the Torquies. We couldn't. All we could recover from him was the $250,000. And that's all we could get, so we could not exhaust that $500,000. So that's sort of a false trail that I think Keith is trying to lead the court on. Now, the definition, that's troublesome unless you're familiar with insurance terminology, because they are both the same. But ever since 1996 when Judge Chapman, who sat on this court, Charles Chapman, saw how they were having all this trouble when there were multiple claimants, and he decided the halfway case. And the halfway case very clearly said that when you're dealing with multiple claimants, you can break that definition of $250,000, $250,000, and you can secure more than that. And the brief from the halfway case is here in the claimant. We go through in the brief and show you how the different language has changed over the years. We have three, four different points where the language has changed in these columns. And here it is. In the halfway, on this halfway case has been cases we've followed it. It's Kapursti and the Supreme Court in Cunningham. And it's part of a lengthy quote, but they say, we conclude that beneficiaries, and they're not talking about just the person that was injured, but that beneficiaries of UIM coverage whose injuries are not fully compensated for by the coverage on your insured vehicle. This is the key language. They are entitled to recover under their UIM coverage, even though the bodily injury limit liability of the underinsured vehicle is equal to or greater than the underinsured motorist limits. That's the key case, and several have followed it. If you've got multiple claimants, you can get beyond that definition, the normal definition. In fact, we've tried. In the Hathaway case, Mr. Gorman, in the Hathaway case, were they talking about derivative claims, or were they actually talking about the person actually injured? In Hathaway, they had multiple vehicles and several people hurt. But there's nothing in that opinion that makes that distinction about people hurt, different people in different empires or a number of claimants when they say. Each of these claimants in Hathaway had their own policies that they were claiming from, right? They did. And each of them were injured and didn't have parents trying to make a derivative claim. Is that true? I'm not sure just how Hathaway was set up. Okay. The key, though, I think, is in Judge Chapman. That started it off. And he, first in Cummings' plight when he had to say that it wasn't just the persons that are injured that have UIM, but also the other claims that come from it, the consortium, the medical bills, lots of services. But I'd like to just stem this language. I'm going on under the conditions part and the limits of liability. And this is the key part, I think, in this language. That maximum amount includes any claims of other persons or damages arising out of that bodily injury. That's in our policy. That's what the court should follow, that these are other claims from other persons that arise out of Brandon's bodily injury. It's not an observed statement. It's in our policy. And then, under the amendment, the amended policy, the key language is, the most we will pay. See, under the old language, you started out by, if you've got money down below, you started by deducting that money. And you had to come out with more than UIM amount before you had the money. That's all gone now. The reduction and set-off language is gone. Here's what we now have, and it's the only limit of liability we have in our policy. It's the difference between the each-person limit of the coverage, which is $250,000 in this case, and the amount paid to the insured by or on behalf of the target person. It couldn't be clearer. That's what Judge Crowder said, well, this is obvious. What are they arguing about? And that's the only limiting language in this whole mess. But I'll tell you what they are doing here is they're delaying. This was a UIM claim that should have been paid two years ago, and it hasn't been paid. And when you analyze the actual language of our policy, and they don't owe us the money. All we're saying is they owe us that coverage at this point. We still have to arbitrate it. We still have to go through the rigmarole and prove the damages, which I think we will be able to do in this case. But the difference between the each-person limit of coverage is $250,000, and the amount paid, I think he should affirm Judge Crowder and award and say that there's still $150,000 coverage for Brandon, and there's still $110,000 coverage for Mr. and Mrs. Niemeyer. And he does throw some Mickey Mouse in the brief about the fact that we put Mr. and Mrs. Niemeyer together. That was strictly for convenience. They both had similar claims. So rather than break it up into three separate claims, we did say let's consider theirs together. And I would ask the court to follow Judge Crowder on this and view this with an eye toward the plain language of this policy, and I believe you'll have a firmer result. Thank you very much. Thank you. Mr. Carlson. There are a few key comments. I just want to make a couple of points. The counsel indicated that he said, again, the claims of the parents arise out of Brandon's injury. Your Honor asked earlier about are they derivative claims. Well, that's what derivative is defined as. It arises out of someone else's injury. And the Supreme Court now has made it pretty clear over and over again that derivative claims are not a separate injury, not a separate limit, they're attributed to the insurer here. So the insurer, the derivative claim, he received $250,000. Next, it might be Katz, who they tried to break it up, and Broody and Boberg, they all rejected those attempts to separately allocate it to include someone's consortium or society claim. Here we have a situation where we talked about my argument. It's Mickey Mouse that pointed out that they're calling their decision about two claimants, but now they're one claimant. You know, why wouldn't the children have separate claims? Why wouldn't the husband and wife each have a $250,000 claim under his argument? Mr. Carlson, can I just ask you a question? Sure. Mr. Gorman makes a point about the language of the policy saying that they're going to pay the difference between each insured, the each person limit of the coverage, $250,000, and the amount paid to the insured. How does your policy define the insured? Well, the person's insured is under BE-4, which means you or any relative, and the you is defined as the name of the insured, the spouse, and the relative. You know, he would be there technically. So does the insured, the definition of the insured in your policy, does it cover derivative claim, parents? No, because first of all, we don't get to the parents because the limits match. Okay? So it's not an underinsured motorist vehicle in the first place. It's with all the terms of the policy. So not just who's an insured, but what is an underinsured motorist vehicle for coverage? So by definition, since there has to be higher limits, it's not an uninsured motorist vehicle, and you don't even have to go any further than that. Here we have in the beginning, in the intro of the case, it talks about an insured as someone who sustains, bodily injury sustained by an insured and caused by an accident. So it has to be the person who is sustained by the injury. Three, he started his argument saying that he had separate claims, that his parents had separate claims against the parents, but he could only recover one claim against the tort fees, because he didn't say why. He said he had separate claims, and the policy limits are $250,000, $500,000, and he didn't exhaust it. There's another $250,000 to exhaust under his own argument. He doesn't say why he couldn't exhaust it. Through four, the damages for the limits of liability, getting back to your question, and again, and the language you just cited to from Mr. Gorman talked about, the policy, you know, again, states that the limits of liability for each person is the maximum amount that will pay for all damage to the rights of the bodily injured, any one person, any one accident. That maximum includes any claim of other person for damage to rights and how they have bodily injuries. So the derivative of claims, so for the one, for the person, for the insured, it's all included, and that's what the Katz cases and the Marshawn cases have talked about in the case where they're trying to stack an additional limit that all those, and I quote in the language quoted from the Katz, they talk about it as it's in the single limit to the insured, so it's all included within that limit. So you can't give, since it's all included to that same person, the insured. Brandon has received $250,000, and it's repeated over and over again. Otherwise, you would see, you know, of course, there's thousands of accidents in Illinois every year, and they involve teenagers or, and who have parents, and you see thousands of these cases with multiple limits. You know, why couldn't the siblings bring their own claims for their loss of their society with their sibling? It's just the, and again, it gets to all the other consequences of how many claims there are. If it's uninsured voters, why wouldn't you have two limits then? And then you get more money as uninsured than an underinsured, unless you would give them a separate limit for uninsured voters for each. Why wouldn't the, if it was a $250 million occurrence, would each parent have the 250? No, because the language is clear. The derivative claims, over and over, are all included in that single limit where there's one person injured, and they have to weigh case. Talk about multiple, there are multiple people, multiple injured people, just like Cummings, and that's the key difference here, which is not present in this case. Thank you. We'll take the matter under advisement. We're going to take a short recess.